**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
SHEET METAL WORKERS' NATIONAL
PENSION FUND, NATIONAL ENERGY
MANAGEMENT INSTITUTE COMMITTEE FOR
THE SHEET METAL AND AIR CONDITIONING
INDUSTRY, SHEET METAL OCCUPATIONAL
HEALTH INSTITUTE TRUST, INTERNATIONAL
TRAINING INSTITUTE FOR THE SHEET METAL
AND AIR CONDITIONING INDUSTRY and
NATIONAL STABILIZATION AGREEMENT OF
THE SHEET METAL INDUSTRY FUND,

**REPORT AND**
**RECOMMENDATION**

                  Plaintiffs,

CV 08-1315 (DRH) (AKT)

      - against -

SKYE SHEET METAL, INC.,
RENEE ASSADOURIAN and RENEE NEGRON,

                  Defendants.
-----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     Pʀᴇʟɪᴍɪɴᴀʀʏ Sᴛᴀᴛᴇᴍᴇɴᴛ

      Following the notation of default and entry of a default judgment against Defendants

Skye Sheet Metal, Inc., Renee Assadourian and Renee Negron, District Judge Hurley referred

this matter to me for an inquest on damages and attorneys' fees. *See* Electronic Order,

November 3, 2008. Judge Hurley's Order further stated that "the scope of the foregoing

reference shall be deemed to encompass such additional authority as reasonable or necessary to

perform the foregoing duties and as is not inconsistent with the Constitution of the United

States." *Id.*

      Plaintiffs are Trustees of the Sheet Metal Workers' National Pension Fund, Trustees of

the National Energy Management Institute Committee for the Sheet Metal and Air Conditioning

Industry, Trustees of the Sheet Metal Occupational Health Institute Trust, Trustees of the

International Training Institute for the Sheet Metal and Air Conditioning Industry and Trustees of

the National Stabilization Agreement of the Sheet Metal Industry Fund (collectively, "Plaintiffs"

or the "Funds") which brought this action against Skye Sheet Metal, Inc., Renee Assadourian and

Renee Negron (collectively, "Defendants") for failure to comply with Defendants' statutory and

contractual obligations to Plaintiffs arising out of the Collective Bargaining Agreement ("CBA")

entered into between the Sheet Metal Workers' International Association Local Union No. 28

(the "Union") and Defendants.  The CBA was effective from August 1, 2005 through July 31,

2009.  Plaintiffs have asserted claims for breach of the CBA in violation of the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA") and the Labor

Management Relations Act of 1947, 29 U.S.C. § 141, *et seq*.

Plaintiffs seek an award of unpaid fringe benefit contributions for the period December 1,

2006 through January 31, 2008, as well as interest, liquidated damages, costs and attorneys' fees.

According to Plaintiffs' unchallenged allegations, the full amount owed, including principal

contributions, interest, liquidated damages, costs and attorneys' fees, is $11,890.87.  *See* Decl. of

Jeffrey S. Dubin in Supp. of Pls.' Damages ("Dubin Decl.") [DE 10], ¶ 7.

Based upon the information submitted by Plaintiffs and for the reasons stated below, the

Court finds that Plaintiffs are entitled to the relief requested in their motion to the extent set forth

in this Order.  I respectfully recommend to Judge Hurley that damages be awarded to Plaintiffs as

follows:  (1) $7,550.79 for unpaid fringe benefits; (2) $1,509.98 in liquidated damages;

(3) $1,100.00 in attorneys' fees; and (4) $605.00 in court costs and disbursements, for a total sum

of $10,765.77.

II.   **BACKGROUND**

This action was commenced in April 2008 by the Trustees of the Funds.  The Funds are

multi-employer employee benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(3).  See

Compl. [DE 1], ¶ 2.

Defendant Skye Sheet Metal, Inc. ("Skye") is a New York corporation authorized to do

business in New York and is an "employer" within the meaning of Sections 3(5) of ERISA, 29

U.S.C. § 1002(5).  Compl. ¶ 3.  Defendants Renee Assadourian ("Assadourian") and Renee

Negron ("Negron") (together, the "Individual Defendants") were, at all times relevant to the

allegations set forth in the Complaint, the owners of Skye.  *Id.*, ¶¶ 11-12; Pls.' Mem. [DE 9] at 2.

Plaintiffs allege that at all relevant times, Assadourian and Negron exercised control over the

activities and operations of Skye and determined whether the company made contributions and

submitted remittance reports to the Funds.  Compl., ¶¶ 17-18; Decl. of Walter Shaw in Supp. of

Pls.' Damages ("Shaw Decl.") [DE 11], ¶¶ 13, 15.  Pursuant to Article XII(B) of the CBA, Skye

was obligated to make fringe benefit contributions to the Funds in specified amounts based upon

the number of hours worked by the employees covered under the CBA.  Shaw Decl., ¶¶ 8, 15;

Compl., ¶ 10.  A complete copy of the CBA is annexed as Exhibit A to the Shaw Declaration.

Plaintiffs allege that between December 2006 and January 2008, Defendants failed to make

fringe benefit contributions for work performed by Union members under the terms of the CBA.

Compl., ¶ 10.

Plaintiffs filed this action on April 1, 2008.  The Summons and Complaint were served

on Skye through the New York Secretary of State on May 27, 2008, and on Negron and

Assadourian, respectively, on July 22, 2008.  *See* Decl. of Jeffrey S. Dubin in Supp. of Pls.'

Damages ("Dubin Decl.") [DE 10], ¶ 3; DE 2-4. Plaintiffs filed proof of service with the Clerk

of this Court on June 6, 2008 (as to Skye) and July 28, 2008 (as to Assadourian and Negron).

*See id*. The deadlines for Skye and the Individual Defendants to answer or move with respect to

the Complaint were June 16, and August 11, 2008, respectively, and none of the Defendants

requested an extension of this deadline. *See* DE 2-4. Further, none of the Defendants filed an

answer or moved in connection with the Complaint by the respective deadlines. To date,

Defendants still have not done so. By Motion dated August 27, 2008, Plaintiffs moved for entry

of a default judgment. *See* DE 5. On the same date, Plaintiffs served a copy of the default

motion on each of the Defendants by first-class mail. *See* DE 5-1. A Certificate of Default was

entered by the Clerk of this Court on October 15, 2008, and copies of the Certificate were mailed

to all parties on the same date. *See* DE 6.

On October 16, 2008, Judge Hurley issued an Electronic Order directing Defendants to

serve and file a response to Plaintiffs' motion for a default judgment by October 30, 2008. On

the same date, Plaintiffs served a copy of that Order upon Defendants by mail. *See* DE 7.

Defendants did not file a response or any other document, and on November 3, 2008, Judge

Hurly entered an Electronic Order referring this matter to me to determine the amount of

damages, if any, to which Plaintiffs are entitled. Following Judge Hurley's referral, this Court

issued an Order directing Plaintiffs to submit documents in support of their damages request and

to serve a copy of that Order and the supporting papers upon Defendants. *See* DE 8. Plaintiffs

served both this Court's March 31, 2009 Order and the documents submitted in support of their

damages request upon each of the Defendants by first-class mail, return receipt, and filed a sworn

declaration of service on ECF. *See* DE 9, 10-1.

## III.    DISCUSSION

### A.    Individual Defendants' Liability

For the purposes of an inquest, the Court generally accepts as true all of the well-pleaded factual allegations set forth in the Complaint, except those related to damages. *See Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)).  However, "[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Philip Gen. Constr.*, 2007 WL 3124612, at *3 (quoting *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (E.D.N.Y.1989)).  In the instant case, Plaintiffs seek entry of a judgment against Defendants Skye, Assourian and Negron, jointly and severally, for the damages incurred as a result of Defendants' failure to pay the required contributions. *See* DE 5-1; DE 9.  Accordingly, this Court must first determine whether the Individual Defendants, Assourian and Negron, may be held personally liable for the damages sought by Plaintiffs in this case.

Under ERISA, plan fiduciaries may be held liable in their personal capacities for breach of their fiduciary duties. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2).  A person is a "fiduciary" as defined by ERISA if that person "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets. . . ."  29 U.S.C. § 1002(21)(A); *see also LoPresti v. Boesch*, 126 F.3d 34, 40 (2d Cir. 1997) ("Congress intended ERISA's definition of fiduciary to be broadly construed") (citation and internal quotations omitted).  Whether Assourian and Negron can be

5

held liable as fiduciaries therefore depends upon whether (1) the unpaid contributions to the Funds constitute plan assets, and (2) if so, whether Assourian and Negron each exercised sufficient control over such assets. *See Philip Gen. Constr.*, 2007 WL 3124612, at *5 (citing *NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 200 (S.D.N.Y. 1999)).

Whether due and unpaid contributions constitute fund assets depends upon the definition of "fund assets" in the underlying wage agreement. *See Philip Gen. Constr.*, 2007 WL 3124612, at *5 ("Delinquent contributions to a benefit fund are fund assets if so defined in the agreement creating the fund.") (citations omitted); *see also Trustees of the Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contractors, Inc.*, 478 F. Supp. 2d 279, 283 (D. Conn. 2007) ("the question of when an employer's contribution becomes an 'asset' of a plan must be determined by reference to the rights and obligations created by the underlying wage agreement") (citing, *inter alia*, *United States v. Panepinto*, 818 F. Supp. 48, 51 (E.D.N.Y.1993)). Thus, the Court turns to the applicable Agreements entered into between the Funds and Skye to determine whether Skye's unpaid contributions constitute "plan assets."

The Amended and Restated Agreement and Declaration of Trust of the Sheet Metal Workers' National Pension Fund provides that "[c]ontributions made or required to be made pursuant to a Collective Bargaining Agreement or other agreement are *plan assets* from the date they are required to be contributed, *whether or not they are collected or received by the Fund*." *See* Shaw Decl., Ex. H, Art. V, § 1 (emphasis added). The Amended and Restated Agreement and Declaration of Trust of the National Stabilization Agreement defines "Contributions" as "the contributions made or required to be made by Employers to the Fund, or to a Local Fund." *See* Dubin Decl., Ex. B, Art. I, § 4. The Amended and Restated Agreement and Declaration of Trust

of the International Training Institute similarly defines "Contributions" as "money paid or payable into the Trust Fund by an Employer pursuant to a Collective Bargaining Agreement." *See* Dubin Decl., Ex. C, Art. I, § 6. Morever, the CBA provides as follows:

> Employer contributions are considered assets of the respective
> Funds and title to all monies paid into and/or due and owing
> said Funds shall be vested in and remain exclusively in the Trustees
> of the respective funds. The Employer shall have no legal or equitable
> right, title or interest in or to any sum paid by or due from the Employer.

*See* Shaw Decl., Ex. A, Art. XII(B), § 24(B).[1] In light of the unambiguous contractual language and the applicable case law, the Court finds that Skye's due but unpaid contributions to the plan do, in fact, constitute "plan assets." *See Philip Gen. Constr.*, 2007 WL 3124612, at \*5 (finding unpaid contributions to be plan assets based upon similar contractual language); *see also Nettleton Mech. Contractors*, 478 F. Supp. 2d at 283 (citing *Trustees of the S. Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F. Supp. 2d 1156, 1163 (C.D. Ca. 2006) (holding general rule that contributions do not become plan assets until paid to the plan "gives way in the face of language in the plan document identifying unpaid employer contributions as plan assets")).

Having found that Skye's unpaid contributions constitute plan assets, the Court now turns to the second element of the test -- whether Assourian and Negron each exercised the requisite level of control over such assets to be deemed a fiduciary. To make this determination, courts within the Second Circuit look to several factors, "[m]ost significantly, [whether] defendant was responsible for authorizing and making payments to an employee benefit plan." *Philip Gen.*

---

[1] Pursuant to the terms of the CBA, the Employer is bound by the provisions of that agreement and the respective Agreements and Declarations of Trust governing the various Benefit Funds. Shaw Decl., Ex. A, Art. XII(B), § 24(A).

*Constr.*, 2007 WL 3124612, at *5 (quoting *Pension Benefit Guar. Corp. v. Solmsen*, 671 F.Supp. 938, 944 (E.D.N.Y.1987) (internal quotations omitted)); *accord LoPresti*, 126 F.3d at 40-41 (that company shareholder exercised primary authority over payments from company's general account supported holding him personally liable for failing to make required payments to ERISA trust funds); *Catucci*, 60 F. Supp. 2d at 202 (that company president "ran the corporation and ma[d]e all decisions on payments by" the company supported holding him personally liable as a fiduciary for failing to make required contributions to ERISA plans). In the instant case, the Court accepts as true Plaintiffs' allegation that Assourian and Negron were the sole owners of Skye, which is a closely held corporation (*see* Pls.' Mem. [DE 9] at 2, 4; Compl., ¶¶ 11-12), and that they each "exercised control over the activities and operations of Skye and determined whether or not [Skye] made contributions to the Benefits Funds." Pls.' Mem. at 2; Compl., ¶¶ 11-12.

The Court further accepts Plaintiffs' undisputed allegations that during the relevant time period, Assourian and Negron both signed checks on Skye's account, including the checks payable to the Funds, and that they decided if and when Skye's bills, including contributions to the Funds, were to be paid (as a result of which Assourian and Negron also decided to use plan assets to pay creditors rather than forwarding the assets to the Funds). Pls.' Mem. at 4. Based upon these allegations, which are not disputed by Defendants, the Court finds that Plaintiffs have stated sufficient facts to support an inference that Assourian and Negron were plan fiduciaries with respect to the Benefit Funds. *See Philip Gen. Constr.*, 2007 WL 3124612, at *5; *see also Solmsen*, 671 F.Supp. at 946 (concluding that individual had fiduciary duty where defendant had power to authorize and make payments to the plan). For these reasons, I respectfully recommend

8

to Judge Hurly that Assourian and Negron, along with Skye, be held jointly and severally liable for damages to the Benefit Funds.

## B. Damages

Having recommended that Defendants Assourian, Negron and Skye be held jointly and severally liable for the unpaid contributions, the Court now turns to ascertaining the amount of damages owed to Plaintiffs. Although "a defendant's default is deemed to constitute his admission of all well-pleaded allegations of liability," *Philip Gen. Constr.*, 2007 WL 3124612, at *9 (citations omitted), the Court must still "conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (citations omitted). "The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *Id*. (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 1009 F.3d 105, 1111 (2d Cir. 1997)).

Plaintiffs submitted the following documents in support of their request for an award of damages: Memorandum of Law in Support of Plaintiffs' Damages [DE 9]; the Declaration of Jeffrey S. Dubin, outside counsel for Plaintiffs, which includes a Statement of Attorneys' Fees [DE 10]; and the Declaration of Walter Shaw, Billing and Eligibility Manager for the Funds, in Support of Plaintiffs' Damages [DE 11], to which several exhibits are annexed, including (1) a complete copy of the CBA [DE 11, Ex. A]; (2) several documents prepared by the Funds in the regular course of business in connection with the calculation of contributions owed by Skye (discussed further below) [DE 11, Exs. B-G]; and (3) the Agreement and Declaration of Trust of the National Pension Fund, which was adopted by Defendants and which sets forth the applicable

liquidated damages rate for that Fund [DE 11, Ex. H]. Annexed as Exhibits to the Dubin Declaration are the Agreements and Declarations of Trust of the four other Funds that are Plaintiffs in this case, all of which were adopted by Defendants [DE 10, Exs. B-E]. The Court finds Plaintiffs' submissions to be sufficient evidence to form the basis for an award of damages. The following discussion assesses the amount of damages to which Plaintiffs are entitled based upon the information set forth in Plaintiffs' submissions and evaluated by the Court.

Plaintiffs seek to recover damages of $7,550.79 for unpaid fringe benefits, $734.09 in interest on the unpaid fringe benefits, $1,509.98 in liquidated damages, $1,100.00 in attorneys' fees, and $605.000 in costs, for a total sum of $11,890.87.

### 1. *Principal*

Plaintiffs seek to recover unpaid fringe benefits earned by the Union members covered under the CBA between December 1, 2006 and January 31, 2008. Plaintiffs allege that Defendants entered into the CBA, were required to make certain contributions in accordance with the terms of that agreement, and failed to do so. In light of Defendants' default, these allegations are accepted as true and Defendants are liable for the unpaid fringe benefits. Plaintiffs request unpaid fringe benefits in the amount of $7,550.79. In support of this request, Plaintiffs submitted the Funds' Rate Sheets [DE 11, Ex. B] showing the contract contribution rates (as set forth in the CBA) for Union employees who worked for Defendants during the relevant time period, and the Schedules of Past Contributions [DE 11, Ex. C], which list the monies owed to the Funds by Defendants on a monthly basis from December 2006 through

January 2008.[2]  Shaw Decl., ¶¶ 21-25.  In further support of their damages request, Plaintiffs

submitted a Summary of Past Contributions [DE 11, Ex. D] for the period December 2006

through January 2008 which reflects the amounts due from Defendants, the amounts previously

contributed, and the balance owed to the Funds.  *Id.*, ¶¶ 26-28.  The Summary of Past

Contributions is based upon the data contained in the monthly remittance reports submitted by

Defendants and the Schedules of Past Contributions and is, in effect, a summary of the

Schedules.[3]  *Id.*, ¶¶ 26-28.  Plaintiffs also submitted a General Information Sheet for Defendants

[DE 11, Ex. F], and a Final Summary [DE 11, Ex. G] which lists the total amounts owed by

Defendants to the Funds for the relevant period and the amounts owed to each Fund.  Shaw

Decl., ¶¶ 33-37.  The Schedules of Past Contributions, the Summary of Past Contributions, and

the Final Summary were all prepared and maintained by the staff of the Funds' Billing and

Eligibility Department, under Shaw's supervision, in the regular course of the Funds' business.

*Id.*, ¶¶ 40-42.  Furthermore, these records "were made at or near the time of the occurrence set

forth therein, as the computer data entry was made within hours or a few days of the time that the

Funds received the monthly remittance reports from the defendants, Skye Sheet Metal, Inc.,

Renee Assadourian [and] Renee Negron."  *Id.*, ¶ 39.

---

[2]    Under the CBA and the relevant Trust Agreements, Employers are required to submit all contributions to the Funds Administrator on a monthly basis.  *See, e.g.* Shaw Decl., Ex. A, Art. XII(B), § 26; Ex. H, Art. V, § 4(a).

[3]    Sheet Metal Industry Trust Fund ("SASMI") compiles its own Summary of Amounts Owed based upon the data contained in the monthly remittance reports submitted by the employers, and then forwards the Summary to Shaw's Office.  Shaw Decl., ¶¶ 29-30 and Ex. E.  SASMI's Summary of Amounts Owed contains the same information as the Summaries of Amounts Owed compiled by Shaw's office for the other Funds -- the amounts due from Defendants, the amounts previously contributed, and the balance owed to the Funds by Defendants.  *Id.*, ¶ 31.

The Court's review of the records submitted by Plaintiffs reveals that the amount of delinquent fringe benefit contributions is $7,550.79, which Defendants have not paid despite their contractual obligation to do so. Accordingly, I respectfully recommend to Judge Hurley that damages be awarded in favor of Plaintiffs in the amount of $7,550.79 for the unpaid fringe benefit contributions.

### 2.    Interest On Unpaid Contributions

Under ERISA, the Funds are entitled to recover interest on the unpaid fringe benefits at "the rate provided under the plan, or if none, 'the rate prescribed under section 6621 of Title 26.'" *Cement & Concrete Workers Dist. Council Welfare Fund,* 2007 WL 2712314, at *3, n.4 (quoting 29 U.S.C. § 1132(g)(2)).

Plaintiffs contend that they are entitled to interest at a rate of eight and one-half percent (8.5%) per month for unpaid contributions from December 1, 2006 through January 31, 2008, for a total amount of $734.09. *See* Dubin Decl., ¶ 7 (citing to 29 U.S.C. § 1132(g) in support of Plaintiffs' damages request). Following a careful review of the applicable law and the documents submitted by Plaintiffs, however, the Court is unable to find within the documents submitted any mention of an 8.5% interest rate on unpaid contributions. ERISA provides that where a judgment in favor of a Benefits Fund is awarded "the court shall award the plan . . . interest on the unpaid contributions. . . ."

29 U.S.C. § 1132(g)(2)(B). The statute further provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986." 29 U.S.C. § 1132(g). Consequently, Plaintiffs are entitled to interest on the delinquent contributions. The Court looks first to the

CBA, pursuant to which a delinquent "Employer agrees to pay the interest, liquidated damages, attorney's fees and costs as provided in the respective Trust Agreement." Shaw Decl., Ex. A, Art. XII(B), § 26. The Court next looks to the Trust Agreements, and particularly to Article 5, Section 4 of the Trust Agreement for the Sheet Metal Workers' National Pension Fund, to which Shaw refers in his Declaration in support of Plaintiffs' request for interest. *See* Shaw Decl., ¶ 38. That provision states, in pertinent part, that "Delinquent Contributions shall bear interest from the original due date until they are paid at the rate of 1% per month, compounded monthly." Shaw Decl., Ex. H, Art. 5, § 4(c). However, the Trust Agreements for the four other Funds contain varying provisions regarding interest rates on delinquent contributions. For example, the Trust Agreement for the National Stabilization Agreement provides that "[i]nterest on unpaid contributions shall be determined using the rate prescribed under Section 6621 of the Internal Revenue Code of 1954." Dubin Decl., Ex. B, Art. V, § 4(c). By contrast, the Trust Agreement for the International Training Institute states that delinquent Employers shall pay "interest on the unpaid Contributions at such rate as the Trustees may fix from time to time or in particular cases[.]" Dubin Decl., Ex. C, Art. VII, § 8(b). The Trust Agreement for the Sheet Metal Occupational Health Institute Trust provides that "the Trustees may require a delinquent Employer to pay[, *inter alia*]: (a) interest on the delinquent contributions. . . ." Dubin Decl., Ex. D, Art. V, § 5.5(b). Finally, the Trust Agreement for the National Energy Management Institute Committee provides that the "Trustees may take any action necessary or appropriate to enforce payment of the contributions, expenses and liquidated damages due from an employer, including, but not limited to proceedings at law and in equity. The Trustees shall adopt such

rules and regulations as may be necessary to ensure that employers are making the proper contributions to the Fund on a timely basis." Dubin Decl., Ex. E, Art. V, § 5.2.

Based upon ERISA, the CBA and the Trust Agreements, the Court finds that Plaintiffs are entitled to prejudgment interest on the unpaid contributions for the period beginning on the date the contributions became delinquent and running through the date that judgment is entered here. Notwithstanding the careful review of the relevant agreements, however, the Court is unable to find any mention of an 8.5% interest rate. Based on the documents provided, it appears that the interest rate is either (1) 1% per month, compounded monthly, *or* (2) the interest rate prescribed under Section 6621 of the Internal Revenue Code, *or* (3) the rate "fixed by the trustee from time to time," which as not been identified here.[4] Accordingly, based upon the current record, I respectfully recommend to Judge Hurley that interest be awarded to Plaintiffs, but that determination of the amount be deferred pending Plaintiffs' submission of additional information. Plaintiffs shall have two (2) weeks to submit additional documentation in support of their request for interest at the rate of 8.5%.

### C. Liquidated Damages

Plaintiffs also seek an award of liquidated damages as contemplated by the CBA and ERISA. Plaintiffs are entitled to liquidated damages "in an amount not in excess of 20 percent of the principal amount due," pursuant to 29 U.S.C. § 1132(g)(2)(C). *See Cement and Concrete*

---

[4] Mr. Shaw is not a Trustee of the Funds and no statement or documentary support from the Trustee has been provided setting forth an 8.5% rate of interest. If 8.5% is the "rate fixed by the trustee from time to time," then Plaintiffs need to submit some supporting documentation.

*Workers District Council Welfare Fund*, 2007 WL 2712314, at *3.[5] The applicable trust agreements likewise require liquidated damages of 20% under the circumstances present here, and provide that such "liquidated damages are estimated, to the best of the Trustees' ability, to approximate the cost to the Fund of the additional administrative expenses and losses incurred when the Fund takes legal action to collect delinquent Contributions." *See* Shaw Aff., Ex. H, Art. V, § 4(c).

As discussed above, the principal amount of unpaid fringe benefits is $7,550.79. Plaintiffs request an award of $1,509.98 in liquidated damages. This amount is reflected in the interest calculations set forth in the Schedule of Past Contributions (Shaw Aff., Ex. C), the Summary of Past Contributions (*id.*, Ex. D), and the Final Summary (*id.*, Ex. G), all of which were prepared by the Funds in the normal course of business. Accordingly, I respectfully recommend to Judge Hurley that Plaintiffs be awarded liquidated damages in the sum of $1,509.98.

### D.     Attorneys' Fees and Costs

Finally, Plaintiffs seek reimbursement for attorney's fees and costs. "An award of costs and reasonable attorneys' fees, in an action such as this, to recover unpaid union fringe benefit contributions, is mandatory." *Mason Tenders Dist. Council Welfare Fund. v. A.G.I., Inc.,* No. 03 Civ. 1238, 2005 WL 1565831, at *6 (S.D.N.Y. June 8, 2005) (citing, *inter alia* 29 U.S.C. § 1132(g)(2)). First, Plaintiffs seek costs and disbursements in the amount of $605.00. Courts

---

[5]     Specifically, the statute provides that Plaintiffs are entitled to liquidated damages in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C).

typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reidman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987). Here, Plaintiffs' request for costs and disbursements consists of $350.00 paid to the Clerk of this Court for the filing fee in this action, and $255.00 paid to a process server for service of the Summons and Complaint on Skye and on the two individual Defendants. *See* Dubin Decl., ¶¶ 10, 12. The Court finds that these costs were incurred by Plaintiffs in connection with the filing and service of the Complaint in this action and that appropriate supporting documentation has been provided. Accordingly, I respectfully recommend to Judge Hurley that Plaintiffs be awarded costs in the amount of $605.00.

Secondly, Plaintiffs request attorney's fees in the amount of $1,100.00. Courts within the Second Circuit determine appropriate attorneys' fees in federal litigation according to a standard of a "presumptively reasonable fee."[6] *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 189 (2d Cir. 2007), *amending* 493 F. 3d 110 (2d Cir. 2007). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or

---

[6] The Second Circuit has recommended abandoning the term "lodestar" as its meaning "has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill*, 522 F.3d at 190 & n.4.

> non-existent remuneration), and other returns (such as reputation,
> etc.) that an attorney might expect from the representation.

*Id.* at 184, 190.

The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Omega Comm'n Services, Inc.*, 543 F. Supp. 2d at 164 (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

To determine reasonable hourly rates, the Court must refer to "the prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)[7] and remain mindful that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

Generally, "hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners. . . ." *Said v. SBS Elecs, Inc.*, No. CV 08-3067, 2010 WL 1265186, at *10 (E.D.N.Y. Feb. 24, 2010) (quoting *Fuchs v. Tara Gen. Contracting,*

---

[7]     The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19.

*Inc.*, No. CV 06-1282, 2009 WL 3756655, at *2 (E.D.N.Y. Nov. 3, 2009); *see also Finkel v. Tripe A Group, Inc.*, No. 07-CV-2653, 2010 WL 1688359, at *3 (Apr. 27, 2010) (in delinquent contribution case under ERISA, the court found attorneys' hourly rates ranging from $200 to $225 to be reasonable); *Gesualdi v. Mack Excavation & Trailer Serv., Inc.*, No. 09-CV-2502, 2010 WL 985294, at *3 (E.D.N.Y. Mar. 15, 2010) (awarding attorney's fees based upon $275 hourly rate in ERISA default judgment action based upon counsel's 40 years of legal experience and ERISA expertise); *Cho v. Koam Med. Servs. PC*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (awarding fees in FLSA and New York Labor Law case based on $250 hourly rate for partner); *Corbett v. Reliance Moving & Storage, Inc.*, No. 1:00-cv-07656, 2007 U.S. Dist. LEXIS 96747, at *13-*15 (E.D.N.Y. May 30, 2007) (awarding an hourly rate of $250 per partner).

To determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation. . . ." *Cho*, 524 F. Supp. 2d at 209 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)).

18

A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted). In the instant case, in support of the request for attorney's fees, Plaintiffs' counsel, Jeffrey Dubin, submitted a Declaration in which he sets forth his professional background and hourly rate. *See* Dubin Decl., ¶¶ 8-11. The Declaration also contains a Statement of Attorneys' Fees, in which counsel describes the tasks performed on behalf of Plaintiffs in connection with this case, the dates on which such tasks were performed, and the amount of time he spent on each task. *See id.*, ¶ 13. Counsel's hourly rate for this work is $250.00 and spent a total of 4.4 hours on tasks related to prosecution of this action on behalf of Plaintiffs, for a total of $1,100.00. *Id.*, ¶¶ 7, 10, 13. Based upon the documentation provided to the Court, I find counsel's hourly rate to be reasonable, and such rate is well within the parameters found reasonable by other courts in this District, as discussed above. The number of hours expended in bringing this case to resolution, as set forth in the Statement of Attorneys' Fees, is likewise reasonable.

Accordingly, I respectfully recommend to Judge Hurley that Plaintiffs be awarded the requested attorneys' fees in the amount of $1,100.00, bringing the total award for attorneys' fees and costs ($605.00) to $1,705.00.[8]

---

[8] In his Declaration, Attorney Dubin also lists Late Fees in the amount of $391.01 as part of the requested damages. *See* Dubin Decl., ¶ 13. However, Plaintiffs have not provided any support for the request for late fees, and this request is not mentioned anywhere else in Plaintiffs' papers. Thus, based upon the information before it, the Court is not in a position to recommend that Plaintiffs be awarded late fees.

**IV.	CONCLUSION**

Based upon the foregoing information, I respectfully recommend to Judge Hurley that Plaintiffs be awarded damages in the following amounts:

- $7,550.79 for unpaid fringe benefits;

- interest on the unpaid fringe benefits in an amount to be determined;

- $1,509.98 in liquidated damages;

- $605.00 in court costs and disbursements; and

- $1,100.00 in attorneys' fees.

Therefore, the total amount of recommended damages is $10,765.77.  I further recommend that Plaintiffs be allowed two (2) weeks to submit additional support for their interest calculations and an explanation of the relevant period.  Plaintiffs' counsel is directed to serve a copy of this Report and Recommendation upon Defendants forthwith by overnight mail and to file proof of service on ECF.

**\*\*\*\***

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service.  Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy.  *See* Fed. R. Civ. P. 6(a),(e), 72.  All objections shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley.  Any request for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of

appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d

Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir.

1996).


**SO ORDERED.**


Dated: Central Islip, New York
            June 22, 2010


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge